UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:18-1337 |
| | § | |
| **LEONEL GARCIA,** | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Leonel Garcia's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1) (D.E. 62), to which the United States of America (the "Government") has responded (D.E. 65).

**I. BACKGROUND**

In November of 2018, Defendant drove a commercial box truck into the primary inspection lane of the U.S. Border Patrol checkpoint near Falfurrias, Texas. Upon further inspection, agents discovered 17 undocumented aliens locked in the back of the truck's cargo area behind rows of boxes. One of the aliens told agents he was having difficulty breathing when he was freed; others reported that the conditions in the truck were very hot and that they feared for their lives, as they could not open the truck from the inside. Agents determined the truck had been created specifically for smuggling aliens and was not a legitimate commercial vehicle.

Defendant was indicted on three counts of transporting undocumented aliens and released on bond. In December of 2018, a urinalysis test submitted by Defendant tested positive for cocaine. Despite the bond violation, he was allowed to remain on bond with additional conditions, including increased substance abuse testing and treatment. In May of 2019, he again violated his bond conditions when was arrested for possession of a controlled substance (synthetic marijuana) and possession of drug paraphernalia.

1

Defendant eventually pled guilty to one count of transporting undocumented aliens and was sentenced to 36 months' imprisonment. His sentence was enhanced pursuant to U.S.S.G. § 2L1.1(b)(6) because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury. As noted in the Presentence Investigation Report, "transportation of persons in a crowded, dangerous, or inhumane condition is specifically cited as an example of such conduct." PSR, D.E. 31, ¶ 19 (citing U.S.S.G. § 2L1.1, comment. (n.3)).

Defendant is currently housed at an administrative security federal medical center. He has served approximately 17 months (47%) of his 36-month sentence and has a projected release date, after good time credit, of January 14, 2022. He now moves the Court to reduce his sentence to time served and add a condition of home confinement because his underlying medical conditions (congestive heart failure, hypertension, diabetes, obesity, and coronary artery disease) make him particularly vulnerable to severe illness or death due to COVID-19. On April 18, 2020, Defendant submitted a request for compassionate release to the Warden of FMC Fort Worth, citing his underlying health conditions and the ongoing COVID-19 pandemic; he says he never received a response.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) *extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The applicable United States Sentencing Commission policy statement provides that extraordinary and compelling reasons for early release exist where:

**(A) Medical Condition of the Defendant.—**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant. –**

The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

**(C) Family Circumstances. –**

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.** –

> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by

> simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**III. ANALYSIS**

Defendant is 39 years old and suffers from congestive heart failure (CHF), hypertension, type II diabetes, morbid obesity, and coronary artery disease. D.E. 62-2. He has a pacemaker implant and takes an array of medications for hypertension, heart failure, diabetes, and anxiety. *Id.* According to the Centers for Disease Control and Prevention (CDC), people with CHF, type II diabetes, coronary artery disease, and obesity are at increased risk of severe illness from COVID-19, and people with hypertension might be at an increased risk. *People with Certain Medical Conditions*, CDC (Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

In April of 2020, Defendant tested positive for SARS-CoV-2, the novel coronavirus that causes COVID-19. On April 23, he complained of "mild body ache" but "denie[d] headache, nausea or vomiting." *Id.*, p. 1. The following day, he complained of "having chest congestion," but no "nausea, vomiting, diarrhea, abdominal pain, body malaise . . . fever, cough, [or] shortness of breath" *Id.* The examining physician noted that Defendant was "comfortable[,] not in acute cardiorespiratory distress. Not noticing coughing, dyspnea, wheezing, [or] difficulty finishing full

5

sentences . . . ." *Id.*, p. 2. On April 25, Defendant was treated for "stroke like symptoms" after he was found unresponsive on the TV room floor. D.E. 62-3. He also reported chills, fatigue, fever, insomnia, weakness, and a cough. *Id.* He was transferred to a local hospital the same day, where an EKG came back normal. *Id.* Defendant has not provided medical records beyond April 25, 2020; however, eight months later, the BOP considers him to have recovered from COVID-19.

Despite being "deemed recovered," Defendant says he still faces the threat of reinfection and/or other related COVID-19 complications. Citing several cases from early in the pandemic, he emphasizes that "[o]ther courts have recognized [] the possibility of a second contraction of COVID-19 in granting motions for compassionate release under 18 U.S.C. § 3582(c)(1)." D.E. 62, p. 13.[1] He also points out that three inmates in BOP custody have died within weeks after testing positive for COVID-19, despite being deemed recovered by medical staff and testing negative for COVID-19 at the time of their deaths.[2] Like Defendant, all three inmates had long-term, preexisting medical conditions that the CDC lists as risk factors for developing more severe COVID-19 disease.

The Government concedes that, in light of the COVID-19 pandemic, Defendant's chronic medical conditions are "extraordinary and compelling" for purposes of § 3582(c). However, it opposes compassionate release because the circumstances of the offense of conviction, combined

---

1. *United States v. Kess*, 2020 WL 3268093 (D. Md. June 17, 2020); *United States v. Heyward*, 2020 WL 3547018 (D. Md. June 30, 2020); *United States v. Yellin*, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020); *United States v. Gaitan*, 2020 WL 3469395 (S.D. Cal. June 25, 2020); *United States v. Schaffer*, 2020 WL 3481562 (N.D Cal. June 24, 2020); *United States v. Common*, 2020 WL 3412233 (C.D. Ill. June 22, 2020); *United States v. Cruz*, — F.Supp.3d—, 2020 WL 3265390 (D. Or. June 17, 2020); *United States v. Halliburton*, 2020 WL 3100089 (C.D. Ill. June 11, 2020).

2. BOP Press Release, *Inmate Death at Terminal Island* (May 27, 2020), available at https://www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf; BOP Press Release, *Inmate Death at FMC Fort Worth* (July 3, 2020, available at https://www.bop.gov/resources/news/pdfs/20200703_press_release.pdf; BOP Press Release, *Inmate Death at FMC Carswell* (Aug. 26, 2020), available at https://www.bop.gov/resources/news/pdfs/20200826_press_release_crw.pdf.

with Defendant's extensive criminal history and inability to follow the conditions of release imposed by numerous courts, demonstrate that he is a public-safety risk.

As detailed in the PSR, Defendant's scored criminal history included convictions for possession of marijuana (three convictions), possession of Alprozolam, and possession of a synthetic cannabinoid. His unscored criminal history included convictions for reckless driving and possession of marijuana. He also was arrested and confessed to committing two car burglaries, but prosecution was ultimately declined.

The Government underscores that Defendant's 2004 deferred adjudication probation for a felony marijuana conviction was revoked after he failed to follow court-ordered conditions, and he was sentenced to three years' probation. That probation was ultimately revoked, and Defendant was sentenced to prison after he committed another felony drug offense; violated conditions of his electronic monitoring; failed to complete community service; refused to participate in drug abuse counseling; and failed to pay fees, costs, and a fine as ordered. In 2015, Defendant received probated sentences for two separate drug offenses. His probation was revoked in both cases after he failed to report, failed to attend required drug education classes, and failed to pay costs, supervision fees, and court-appointed counsel fees as ordered. As described in Part I, *supra*, Defendant failed to follow the Court's ordered conditions of pretrial release in this case, using cocaine and committing two additional drug offenses while on bond. The Court ultimately issued a warrant for his arrest and ordered that bond be defaulted, after he failed to appear for sentencing on two separate occasions. *See* D.E. 40, 59.

Finally, while Defendant maintains that his current offense was non-violent, he ignores the fact that his conduct created a substantial risk of death or serious bodily injury to the 17 individuals locked in the back of the cargo truck he was driving. The Government stresses the conditions were

so bad that these individuals feared for their lives, and one was having difficulty breathing when he was rescued by agents.

The Court finds the Government's arguments persuasive and concludes that, although Defendant's underlying medical conditions place him at an increased risk of severe illness in the rare event that he is reinfected with COVID-19,[3] any such risk is outweighed by the danger to the community if he is released. The Court further finds that the § 3553(a) factors, as considered in the specific context of the facts of Defendant's case, do not warrant a reduction in his sentence. Specifically, releasing Defendant after he has served less than half of his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1) (D.E. 62) is **DENIED**.

It is so **ORDERED** this 14th day of December, 2020.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

---

3. The cases cited by Defendant—all from June 2020—recognized the possibility of reinfection based on the currently available scientific data at that time. *See supra*, n.1. The World Health Organization (WHO) has since reported that "[m]ost people who are infected with COVID-19 develop an immune response within the first few weeks after infection." *Coronavirus disease (COVID-19): Herd immunity, lockdowns and COVID-19*, WHO (Oct. 15, 2020), https://www.who.int/news-room/q-a-detail/herd-immunity-lockdowns-and-covid-19. One recent study showed that, eight months after infection, most people who have recovered from COVID-19 still have enough immune cells to fend off the virus and prevent illness. Jennifer M. Dan, *et al.*, *Immunological memory to SARS-CoV-2 assessed for greater than six months after infection*, BIORXIV (Nov. 16, 2020), https://www.biorxiv.org/content/10.1101/2020.11.15.383323v1. "Cases of reinfection with COVID-19 have been reported, but remain rare." *Reinfection with COVID-19*, CDC (Oct. 27, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.*